THE IOWA MERCANTILE COMPANY, Appellant v. BLAIR & WENDT, W. O. FOSTER, BEN TAIT, *et al*, Appellees.

**Taxes: VOLUNTARY PAYMENTS RECOVERY.** Code section 1400 provides that taxes upon a stock of goods shall be a lien thereon when sold in bulk which may be collected from the owner or vendee, but when sold by the purchaser at retail the same are divested of the lien, and payment of the tax by the purchaser after such sale to save other property from distraint for the tax, is a voluntary payment which cannot be recovered from the vendor.

*Appeal from Jasper District Court.—*HON. JOHN T. SCOTT, Judge.

THURSDAY, MARCH 10, 1904.

SUIT in equity, whereby plaintiff seeks to be subrogated to the rights of the county treasurer of Jasper county against the defendants, and for judgment for the amount of certain taxes paid by it on a stock of merchandise purchased by it from defendants Foster & Tait. The trial court dismissed the petition, and plaintiff appeals.—*Affirmed.*

*McElroy & Cox* for appellant.

*Harrah & Myers* and *A. F. Brown* for appellees.

DEEMER, C. J.—Defendants Blair & Wendt owned a stock of merchandise, which was listed by them for taxation in April of the year 1900. The board of supervisors of Jas-

per county, in which county the goods were situated, at its September session, levied a tax thereon against Blair and Wendt in the sum of $101.75; this tax becoming a lien upon the stock. In October of the same year, Blair & Wendt sold the merchandise in bulk to the defendants Foster & Tait, impliedly warranting the same as free from incumbrance. Shortly thereafter Foster & Tait sold the goods in bulk to the plaintiff under the same implied warranty. Thereafter plaintiff sold the entire stock at retail. After the stock had thus been disposed of, the county treasurer of Jasper county transferred the taxes levied on the goods in the year 1900, upon the records of his office, to and against the plaintiff herein, and in September of the year 1902 was about to levy upon plaintiff's property for the purpose of satisfying the aforesaid taxes, when plaintiff paid the amount thereof, with interest and penalty, to said treasurer. Plaintiff seeks in this action to recover the amount so paid from its immediate and more remote grantors, on the theory of breach of warranty in the sale of the goods, and it asks to be subrogated to the rights of the county treasurer against them.

It is practically conceded, as, of course, it must be, that, if plaintiff was a mere volunteer in the payment of these taxes, it cannot recover the amount thereof from the defendants, for the plain reason that one cannot ordinarily make another his debtor without that other's consent. Great reliance is placed on Section 1400 of the Code, which, so far as material, reads as follows: "Taxes upon stocks of goods or merchandise shall be a lien thereon when sold in bulk, and may be collected from the owner, purchaser or vendee." We shall assume, for the purpose of the case, that the taxes, when levied and assessed against Blair & Wendt, were a lien upon the stock of goods, and that this lien continued so long as the goods remained in bulk, and could be collected from the owner, or any other person in whose hands the goods were found. But it is to be observed that this lien did not follow the goods when sold at retail. We shall also assume, for the purpose of the case, that there was an implied warranty

against incumbrances in each of the sales to which we have referred.    But it is clear that this lien was discharged or ceased to exist whenever the goods were sold at retail.    This being true, plaintiff suffered no damage on account of the breach of warranty, because it had sold the goods at retail before any attempt was made to collect the taxes thereon.    It did not, therefore, pay the taxes to remove any lien or incumbrance against the goods, but because the county treasurer had made this tax a personal charge against it, and was about to distrain other property to secure a satisfaction of this charge.    Plaintiff, in order to recover, then, must show that, under the section of the statute quoted, there was a breach of an implied warranty in the sale of the goods, which caused it damage, or that it was justified in paying the taxes transferred against it personally, on the theory of an implied request from those who were primarily responsible, and is entitled to a personal judgment against them, or to a decree subrogating it to the rights of the county against the grantors and former owners of the property.    That the lien against the stock of goods ceased to exist when they were sold at retail seems too clear for argument; but it is argued that the tax became a personal liability against all who at any time owned the goods while in bulk, and that this liability, when paid by one remotely bound, may be enforced against prior owners.    We do not think this is sound.    The statute quoted makes the taxes a lien on the property when sold in bulk, but does not make the purchaser personally liable therefor.    True, they may be collected from the owner, purchaser, or vendee, but this collection must be by the ordinary methods provided for such collection; that is to say, by distraint and sale of the property itself.    No statute makes the purchaser of such a stock of goods personally liable, and we have uniformly held that such taxes cannot be collected by an ordinary action for debt.    *Plymouth Co. v. Moore,* 114 Iowa, 700.    Nothing but the stock is subject to a lien for the taxes levied against the owner thereof while in the hands of a purchaser or vendee, and when the stock is sold at retail the lien ceases to exist,

and there is no personal charge against the purchaser or vendee. Plaintiff .was not required to pay these taxes to free his goods from the lien thereof, and the personal liability attempted to be imposed upon it was entirely without authority. In no event is any one, other than the owner of the goods when the tax is assessed and levied against it, under a personal liability to pay the taxes. True, a lien for the amount of these taxes follows the goods, so long as they remain in bulk, but this lien is not a personal charge against the vendee. Plaintiff did not pay to save the goods he had purchased of the defendants, but to save other property, upon which the taxes were not a lien. What authority, then, did it have to make the payment, and to charge the defendants with the amount thereof? Surely, as a stranger or a mere volunteer, it had no right to do so. Defendants did not authorize it to make any payment of their personal obligations to Jasper county. At most, it was authorized to remove a lien upon the goods which it had purchased from the defendants. When that lien ceased to exist, by operation of law or otherwise, this implied request was at an end; and they stood simply in the position of a stranger to the tax, and could not by intermeddling make the defendants their debtors. This is hornbook law, sustained by the following, among other, cases: *Iowa R. R. Land Co. v. Davis,* 102 Iowa, 128; *Ellsworth v. Randall,* 78 Iowa, 141; *Garrigan v. Knight,* 47 Iowa, 525; *Montgomery v. Gibbs,* 40 Iowa, 652.

Appellant's counsel argue that there is no evidence that the stock of goods had been disposed of when the taxes were paid. They, however, overlook an allegation in the petition which expressly states that the goods had been disposed of at retail before the taxes were paid. They further argue that the taxes on this stock of goods became a personal charge against their client, and, as it was but secondarily liable, it is entitled to recover the amount paid from the defendants by reason of their primary liability. While section 1400 is a little ambiguous, we think that, when construed with other sections of the Code relating to taxation, there is no warrant

for the assumption that there is any personal liability against any one save the owner of the goods when the taxes were levied and assessed. Taxes are ordinarily levied and assessed against the owner of personal property, and it is his duty to pay the amount thereof. Such taxes become a lien upon the real estate of the owner, and may be collected from any personal property owned by him. Section 1400 makes taxes upon stocks of merchandise a lien thereon when sold in bulk, and provides that they may be collected from the owner, purchaser, or vendee. Without this statute, a purchaser of such a stock of goods would take title free from any claim on account of taxes. Ordinarily taxes are not a lien on personal property until seizure thereof under a tax list. The statute now relied upon makes taxes levied upon stocks of merchandise a lien thereon, and provides that they may be collected from any one in whose hands the goods may be found, so long as they remain in bulk. This does not mean that these taxes become a personal charge against any one save the owner at the time the goods are assessed. It simply gives an additional remedy, and a right to follow the goods, and to distrain them for the taxes assessed, so long as they remain in bulk. The act of the county treasurer in transferring these taxes to plaintiff's account, and in charging it with the amount thereof as a personal liability, was entirely unauthorized. The demand made against it was unlawful, and it was not required to satisfy the claim. Defendants made no request of plaintiff, either express or implied, to satisfy these taxes, and plaintiff is not entitled to recover on the theory of subrogation. Had the action been to recover for benefits conferred without request, on the theory that it would be inequitable for the defendants to retain the advantage of the payment without being subject to its burdens, we might, perhaps, have found some principle on which to sustain a recovery. But even in such cases it must appear that plaintiff's act in making payment was necessary. That does not appear in this case, and it is fundamental that ordinarily a man has a right to select his creditor. This action is not, how-

ever, bottomed on any such theory. To justify a recovery under the pleadings filed in this case, it must appear that plaintiff paid taxes on property which it had purchased of the defendants, in order to discharge a lien existing against it; that it was compelled to pay taxes for which it was only secondarily liable, or that it paid them because of a request, either express or implied, of the defendants to do so. None of these things are shown, and the trial court was right in dismissing the petition.—AFFIRMED.