Rockingham
No. 89-273

THERESE PAPPALARDO

v.

BANK OF BOSTON, ESSEX, N.A.

March 8, 1991

*Gormley & Kaklamanos P.C.*, of Nashua (*Arthur O. Gormley, III*, on the brief, and *Fred K. Mayer, III*, orally), for the plaintiff.

*Merrill & Broderick*, of Manchester (*Martha V. Gordon* on the brief and orally), for the defendant.

THAYER, J.   This case presents us with a longstanding question in this State; namely, whether funds on deposit with a bank are "goods and chattels" within the meaning of the distraint provision of New Hampshire's revenue collection statute, RSA 80:8. The plaintiff, Therese Pappalardo, appeals from an order of the Superior Court (*Temple*, J.) granting summary judgment for the defendant, the Bank of Boston. The issues presented are whether the trial court erred in finding that, (1) bank accounts are goods and chattels within the meaning of RSA chapter 80, and (2), as a matter of law, the defendant did not commit any negligence, breach any duty or convert any of the plaintiff's property by honoring the distraint served upon it by the State of New Hampshire. For the following reasons, we reverse and remand for a trial on the merits of the case.

The undisputed facts are as follows. On November 8, 1983, Therese Pappalardo, a New Hampshire resident, deposited $50,000 with the Bank of Boston ("the Bank") and obtained a certificate of deposit with an interest rate of 11.25 percent and a maturity date of May 8, 1987. The deposit was made at the Lawrence branch of the Bank, where Ms. Pappalardo also had a money market account. Although not at issue in this case, later that month, Ms. Pappalardo also obtained a certificate of deposit from the Bank of New England. On August 16, 1985, the Bank received, by mail, a distraint for taxes from the New Hampshire Department of Revenue Administration ("DRA"), demanding that the Bank surrender, as unpaid business

profits taxes, $15,169.66 in money on deposit in the name of Therese Pappalardo. RSA 80:8 states: "Upon neglect or refusal of any person or corporation to pay the taxes assessed upon them [sic], the collector may distrain the goods and chattels of such person or corporation."

On August 19, 1985, the Bank, without prior notice to Ms. Pappalardo, issued two drafts totalling the full amount of unpaid taxes owed to the State of New Hampshire. One draft, in the amount of $4,055.55, was issued from Ms. Pappalardo's money market account, and the other draft, in the amount of $11,114.11, was issued from the certificate of deposit. The Bank then paid itself an early withdrawal penalty of $1,406.25 and issued a check to Ms. Pappalardo for the balance remaining in the certificate of deposit, totalling $37,526.51. (At approximately the same time, the Bank of New England froze Ms. Pappalardo's funds in response to a similar distraint order issued by the DRA.) In September of 1985, Ms. Pappalardo, through her attorney, demanded that the Bank return the $15,169.66 to her account. The Bank never complied with this demand, although it did attempt to retrieve the funds from the State of New Hampshire through a letter written October 11, 1985.

In October of 1986, the plaintiff sued the Bank in superior court alleging wrongful disbursement of her funds, breach of contract, and negligence in disbursing the funds in question without determining whether such monies held on deposit fall within the provisions of RSA 80:8. In December, Ms. Pappalardo amended her complaint against the Bank to add a claim for conversion of the full $15,169.66 given to the State, and alleging damages for emotional distress. In November of 1988, the Bank filed a motion for summary judgment, asserting that no genuine issue of material fact existed. The Bank argued that bank accounts are personal property, and fall within the term "goods and chattels" as it is used in RSA 80:8, thus entitling the Bank to judgment as a matter of law. The Bank further maintained that Ms. Pappalardo failed to allege that the New Hampshire distraint order was invalid and unenforceable, and as such, all claims of conversion, breach of contract and negligence must necessarily fail. The superior court held a hearing on the Bank's motion and found that, as a matter of law, money on deposit constitutes goods or chattels under RSA 80:8. The court found that "[e]ach of the plaintiff's claims hinge[s] on her allegation that the Department lacks authority to distrain funds in a bank account," and concluded that because the DRA had such authority, all of the plaintiff's claims against the Bank "must fail."

The plaintiff now appeals to this court contending, primarily, that the trial court erred in finding that funds on deposit are goods or chattels under RSA 80:8. Furthermore, the plaintiff argues that her claims do not rest upon the DRA's authority to attach and levy her funds. Rather, she contends that the Bank owed her a duty of reasonable care in disbursing her funds and that the Bank breached that duty and committed conversion when it disbursed them to the State pursuant to the distraint order. We reverse the lower court's finding that money on deposit falls within the meaning of "goods and chattels" as the term is utilized in RSA 80:8, and remand to the lower court the remaining issues raised by the pleadings.

■ The primary issue in this case, whether money in a bank account is a good or a chattel, has never been addressed by this court. Initially, it should be noted that existing federal case law is of little value to our analysis of the phrase "goods and chattels" as it is used in the New Hampshire distraint statute. The federal cases relied upon by the lower court interpret a statute which specifically permits the distraint of all property, and all rights to property, belonging to a delinquent taxpayer. *See* 26 U.S.C. § 6331(a); *United States v. National Bank of Commerce*, 472 U.S. 713, 722 (1985). By contrast, RSA 80:8 provides that only the "goods and chattels" of a delinquent taxpayer may be subject to the distraint process and makes no reference to credits or all rights to property possessed by the taxpayer. We cannot rely upon cases construing the federal distraint statute in determining the limitations of our own distraint statute, because the federal statute is not as narrowly tailored as RSA 80:8. Moreover, the Bank's reliance upon *Fling v. Goodall*, 40 N.H. 208, 215 (1860), is misplaced. That case involved the determination of the operative effect of the term "chattels" within the old version of the trustee process statute. The issue now before us centers upon the use of the term in a very different context, that of the distraint statute. Since *Fling v. Goodall*, the legislature has amended the trustee process statute on a number of occasions, and the effect of these amendments has been to clarify what property is properly subjected to trustee process. The distraint statute has undergone no such modification. Therefore, we do not view *Fling v. Goodall* as controlling our decision on the issue now before us. The legislature expressly limited the power of distraint to "goods and chattels." Therefore, we will not interpret RSA 80:8 to include property that falls outside that exclusive itemization. *See Silva v. Botsch*, 120 N.H. 600, 602, 420 A.2d 301, 302 (1980).

Because RSA 80:8 does not explicitly subject bank accounts or monies held on deposit to the distraint process, we first look to the plain meaning of "goods and chattels" to determine if these items are included in that phrase's definition. *See Chemical Bank v. Rinden Prof. Ass'n*, 126 N.H. 688, 696, 498 A.2d 706, 713 (1985). Traditionally, the word "chattels" has been strictly defined to comprise things movable and tangible, which may be annexed to, or attendant on, the person of the owner. *See* 73 C.J.S. *Property* § 21 (1983). Although "chattels" has a broad and inclusive meaning today, at common law the term was used as "a general denomination of personal property, as distinguished from real property." *Rowe v. Colpoys*, 137 F.2d 249, 250 (D.C. Cir.), *cert. denied*, 320 U.S. 783 (1943). Indeed, if the term has any fixed meaning at all, such a meaning can only be defined by its exclusion from the realm of real property. *See* BLACK'S LAW DICTIONARY 215 (5th ed. 1979). A bank account is also personal property, as opposed to real property, but this classification is hardly dispositive of the issue before us. Therefore, we next look at how courts have classified the property rights represented by bank accounts to determine if a bank account fits within the context in which "goods and chattels" is used in RSA 80:8. *See Armille v. Lovett*, 100 N.H. 203, 205, 122 A.2d 265, 267 (1956).

When a person deposits money into a bank, a debtor/creditor relationship is created. The bank becomes the depositor's debtor in that the depositor's money does not sit idle in a vault, but is used by the bank in its other endeavors. Any sums on deposit are payable by the bank by order of the depositor and on demand. *Petition of Keyser*, 98 N.H. 198, 199, 96 A.2d 551, 552 (1953) (citing *State v. National Banks*, 75 N.H. 27, 29, 70 A. 542, 544 (1908)). Thus, the depositor has a right to be reimbursed for any amount which has been deposited. This intangible form of property has been classified as a "chose in action." *Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 248 (1944). Therefore, when a judgment creditor seeks to attach a debtor's bank account, he or she is seeking to attach the depositor's right to payment, rather than the actual money that may be in the account.

In contrast to the distraint statute, RSA 512:9-b allows a judgment creditor to attach and levy upon such items as bank accounts by employing a specific statutory procedure known as "trustee process." Through trustee process a debtor's property may be attached and appropriated towards the payment of debts when the property is possessed by third persons. *Philbrick v. Philbrick*, 39 N.H. 468, 474 (1859). A writ of trustee process commands the sheriff "to attach money, goods, chattels, rights and credits" of a defendant held by a

third party. RSA 509:18 (repealed 1981). *See also* RSA 512:9-b. Unlike the language in RSA 80:8, trustee process clearly encompasses the attachment of rights and credits, which includes monies held on deposit. Thus, trustee process is the proper mechanism for the levy of bank accounts.

When the DRA enforces a tax assessment through its powers of distraint, it essentially has a levy by writ of execution on the taxpayer's property. *See Flack v. Agency*, 96 N.H. 335, 336, 76 A.2d 788, 789 (1950). Under our interpretation of the wording of RSA 80:8, however, a bank account cannot be reached through the distraint process, because the term "goods and chattels," as it is used in that statute, does not include rights and credits. We must construe the distraint statute strictly. *Lafavour v. Bartlett*, 42 N.H. 555, 557 (1861). The State is a judgment creditor, however, by virtue of the DRA's tax assessment, and like any other judgment creditor the State may use trustee process to reach the recalcitrant taxpayer's bank accounts. Because New Hampshire law has a mechanism in trustee process that expressly provides for the attachment of rights and credits represented by a bank account, the State, under the present statutory framework, must employ that mechanism to reach funds on deposit with a bank. Accordingly, we reverse the lower court's grant of summary judgment and remand all remaining issues.

*Reversed and remanded.*

HORTON, J., did not sit; the others concurred.